IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ADRIAN JUSTICE TEMPLETON,            )
                                     )      Civil No. 02-1564-ST
        Petitioner,                  )
                                     )
    v.                               )
                                     )
JEAN HILL,                           )
                                     )      FINDINGS AND RECOMMENDATION
        Respondent.                  )

   Donnal S. Mixon
   Assistant Federal Public Defender
   15 Newtown Street
   Medford, Oregon 97501

        Attorney for Petitioner

   Hardy Myers
   Attorney General
   Carolyn Alexander
   Assistant Attorney General
   Department of Justice
   1162 Court Street NE
   Salem, Oregon 97310

        Attorneys for Respondent

///

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He challenges his underlying convictions for Attempted Murder, Assault in the First Degree, and Assault in the Second Degree on the basis that he was the victim of ineffective assistance of trial counsel. For the reasons which follow, the Petition for Writ of Habeas Corpus (docket #2) should be denied, and judgment should be entered dismissing this case with prejudice.

## BACKGROUND

On October 4, 1995, petitioner was involved in an altercation with Jonathan "J.B." Peterson and Paul Conger. Petitioner allegedly stabbed Peterson in the chest with a knife, and stabbed Conger in the back with a broken beer bottle. Trial Transcript, p. 101. Officer Paul Vitus apprehended petitioner, identified himself as a police officer, drew his weapon, and told petitioner to lay down in a parking lot. Id. Before officers could ask petitioner any questions, petitioner offered the following confession, which was introduced at trial:

> I'm glad it's over. You guys are okay. I can't run anymore. You probably want to know what happened back there. Well, I'll tell you. I stuck him good. Real good. Both of them should have been killed. Wished I did. Should've done it. I tell you, they were calling me nigger, the N word. I hate that. They were bragging how they were the white supremacy, neo-Nazis, so I stuck them. J.B. got it with a knife and Paul with a broken 40-ounce beer bottle. Got him in the back. Stuck J.B. real good. Should've killed them. Tried to. I'll do it again. No one calls me the N word, nigger. Don't like it. But you guys are okay. I'm going to the big

2 - FINDINGS AND RECOMMENDATION

>    house.  You know about my warrants.  That will do me in
>    alone.  Tell my family I'm going away to the pen.  This
>    will keep me there.  Can I have a smoke?  Screwed up my
>    leg jumping and kicking Paul's head in.  Shouldn't have
>    called me nigger.

Id at 101-102.

Officer Vitus then advised petitioner of his Miranda rights. Id at 102, 105. Petitioner replied, "Yes, I know. Don't need an attorney," and continued to describe his participation in the crimes. Id at 105-107. Later, petitioner confessed to police again on a recorded audiotape, and confessed a third time in a videotaped re-enactment of his crimes. Id at 142-44. He was later indicted on charges of Attempted Murder, Assault in the First Degree, and Assault in the Second Degree. Respondent's Exhibit 103.

On January 26, 1996, the day his trial was set to begin, petitioner's appointed attorney, Thomas Evans, withdrew as counsel of record because of an unspecified conflict, and the trial court appointed Rebecca Davis to represent petitioner. With Davis as his counsel, petitioner initially elected to plead guilty to Attempted Murder and Assault in the Second degree, but later filed a successful motion to withdraw the plea. Respondent's Exhibits 116 & 117.

At trial, the State not only offered petitioner's confessions as evidence, but also called the two victims, Peterson and Conger, to testify. However, they both denied that petitioner had stabbed

or assaulted them. Trial Transcript, pp. 127-29, 134-37. The State impeached both of these witnesses with their prior inconsistent statements to the police in which they had both identified petitioner as their assailant. Id at 132-33, 139-41.

Petitioner was convicted by the jury on all counts. Respondent's Exhibit 101. The trial court merged the Attempted Murder and Assault in the First Degree convictions, resulting in a 120-month sentence. The court also imposed a consecutive sentence of 70 months based on the Assault in the Second Degree conviction. Id.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed the trial court without opinion, and the Oregon Supreme Court denied review. State v. Templeton, 149 Or.App. 497, 944 P.2d 1001, rev. denied, 326 Or. 68, 950 P.2d 892 (1997).

Petitioner next applied for post-conviction relief ("PCR") in the Oregon courts, but the PCR trial court denied relief on all of his claims. Respondent's Exhibits 121 & 122. The Oregon Court of Appeals affirmed the lower court without opinion, and the Oregon Supreme Court denied review. Templeton v. Palmateer, 172 Or.App. 482, 19 P.3d 389 (2001), rev. denied, 333 Or. 400, 42 P.3d 1244 (2002).

Petitioner filed this habeas corpus case on November 18, 2002. In his Petition for Writ of Habeas Corpus, petitioner alleges that

he received ineffective assistance of counsel based on the performances of two different attorneys. His Petition identifies his claims as follows:

> Mr. Thomas Evans was my appointed attorney I told him about my case & he relayed the information to the D.A. tryin to get me a plea agreement but couldn't. I said I'm goin to trial & he said he couldn't represent me any further. Ms. Rabeka Davis called a witness to testify on my behalf which the person didn't do but informed the jury that my attorney had spoke to him and told him certin things to say which weren't true. Ms. Davis also never informed me that Mr. Evans couldn't testify against me if I took the stand on my behalf. Ms. Davis let me take back a plea sayin me had a better chance at knockin more time off at trial than the plea bargin I was offered.

Petitioner for Writ of Habeas Corpus (docket #2), p. 4.

Counsel for petitioner believes that he raises four claims of ineffective assistance of counsel:

(1) Evans disclosed privileged client communications to the prosecutor during plea negotiations;

(2) Davis attempted to suborn perjury;

(3) Davis never informed petitioner that Evans could not testify against him if petitioner took the stand in his own defense; and

(4) Davis advised petitioner that he stood a better chance of receiving a reduced sentence if he withdrew his plea and proceeded to trial.

The parties disagree as to whether petitioner actually raised the first claim in his Petition. According to Rule 2(c) of the Rules Governing Section 2254 Habeas Cases, a petition for writ of habeas corpus must "specify all the grounds for relief available to the petitioner." Petitioner has alleged that his attorney relayed

5 - FINDINGS AND RECOMMENDATION

information about his case to the prosecutor.  Although petitioner does not explicitly allege that his attorney disclosed privileged communications to the prosecutor, the language of the *pro se* Petition is sufficiently specific to present such a claim for the court's consideration.

Respondent asks the court to deny relief on the Petition because the third claim is procedurally defaulted, and the state court decisions as to the remainder of petitioner's claims are entitled to deference.  Petitioner concedes that he failed to fairly present his third claim to Oregon's courts, and that the claim is now procedurally defaulted.  Reply (docket #48), pp. 4, 25.  The court therefore proceeds to the merits of the first, second, and fourth claims.

## DISCUSSION

### I. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner

bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

## II. Analysis

### A. Disclosure of Priviliged Communications

Petitioner alleges that Evans provided ineffective assistance of counsel when he disclosed information to the prosecutor which was protected by the attorney-client privilege. Specifically, Evans purportedly told the prosecutor that petitioner had confessed to committing the crimes alleged in the indictment and intended to

testify falsely at trial, prompting Evans' withdrawal when the prosecutor argued that Evans could no longer ethically represent petitioner at trial.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." Id at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. Id at 696.

The PCR trial court specifically found that Evans "did not share attorney-client confidences with the prosecution. The prosecutor, in arguing that petitioner's new attorney could not ethically present a defense that petitioner was not guilty, relied on petitioner's statements, made on the record, that he was guilty." Respondent's Exhibit 122, p. 2. This finding carries

8 - FINDINGS AND RECOMMENDATION

with it a presumption of correctness which can only be overcome through a showing of clear and convincing evidence that the factual finding is not true. See 28 U.S.C. § 2254(e)(1).

Petitioner directs the court to the affidavit of the prosecutor in his case. In her affidavit, the prosecutor attests that: "I am informed and believe that the basis for Thomas Evan's [sic] withdrawal on the morning of trial is [sic] because the defendant had indicated to defense counsel that he had committed acts alleged in the indictment, but defendant intended to testify in his trial to the contrary." Respondent's Exhibit 118, pp. 1-2. Petitioner emphasizes that the prosecutor's affidavit shows that Evans actually *informed* her of petitioner's confession.

The record also contains an affidavit from Evans stating: "I don't believe I made any strategic decisions in ignorance of the attorney/client confidentiality and without the defendant's authorization." Respondent's Exhibit 115, p. 1. His affidavit also states:

> What I recollect about this case is that initially the defendant told me clearly that he did not stab anybody and I conveyed that information to the district attorney as a statement that the defendant couldn't plead guilty to any degree of stabbing because he didn't do it. Subsequently in conversation with the district attorney I indicated that the defendant would be willing to talk about some kind of a reduced plea, and I believe that the district attorney inferred from that that I was saying that the defendant now admitted to me that he had done the stabbing. I don't recall exactly the conversation she was relying upon. It was the district attorney's claim that she was going to raise these issues during the trial if I represented the defendant in the trial and he

9 - FINDINGS AND RECOMMENDATION

>           testified.  It caused me to withdraw because I felt
>           something like this should not be muddying up the issues
>           in the defendant's trial.

Id at 2.

In petitioner's PCR deposition, he testified that he asked Evans to approach the prosecutor about the possibility of entering a guilty plea. Respondent's Exhibit 114, pp. 6-7. When Evans did so, the prosecutor could have inferred that petitioner had admitted, or at least was willing to admit, to his participation in the crimes. In fact, petitioner's testimony during his PCR trial reveals that he believed the alleged disclosure accompanied the inquiry regarding a possible plea bargain:

> Petitioner:   Well, I just -- I told him what happened
>               that night, you know, and I was like,
>               man, I just told him what had happened,
>               and he -- he said, okay, well, I'm going
>               -- I'm going to do -- I'm going to
>               represent you, I'm going to do everything
>               I can for you.  And I guess later on he
>               had came back to me, well, I was trying
>               to make a deal with them, right.  He was
>               like, well, we can get you a lie detector
>               test, you know what I'm saying, and it
>               might work for you.  And I was like,
>               okay, we'll do that.  And I was trying to
>               get a plea bargain.
>
> Counsel:      Uh-huh.
>
> Petitioner:   And I told him what happened that night,
>               and I guess he went back and told the DA
>               what I had told him as into what I had
>               done or -- what I had done and what
>               hadn't done and the reasons why there was
>               a confession, you know what I'm saying.

| | |
|---|---|
| Counsel: | Did Mr. Evans tell you that he actually told the DA that you had confessed to him? |
| Petitioner: | Yes. He told me after I told him, well, let's get a lie detector test, you know. |

\* \* \* \* \*

| | |
|---|---|
| Petitioner: | He came back and said well, she's not going to accept one. And I was like, well, what about plea bargain? He said, well, I told her what you had told me. And I said, well, what was the plea bargain? And he said a hundred and sixty months or something like that, a hundred and eighty to a hundred and sixty months. I said, well, I'm not going to take that. And he said, well, are you going to go to trial? And I said, yes. He said, well, then I can't be your attorney for a conflict of interest. |

Id at 6-8.

It appears from the record that the prosecutor inferred petitioner's guilt from Evans' inquiry into a possible plea. However, even assuming Evans did tell the prosecutor that petitioner had confessed to his participation in the crimes, this information was not confidential under Oregon law because petitioner admitted his guilt many times. See State v. Durbin, 335 Or. 183, 190, 63 P.3d 576 (2003 ("Confidentiality lies at the heart of the [attorney-client] privilege, for unless the communication is 'not intended to be disclosed to third persons,' it is not protected by the privilege at all."). As previously discussed, petitioner confessed to his arresting officers, later provided an audiotaped confession, and also provided police with a videotaped

11 - FINDINGS AND RECOMMENDATION

re-enactment of the crimes. Because petitioner communicated his culpability to various third parties before Evans purportedly made this disclosure to the prosecutor, it was not confidential information covered by the attorney-client privilege.

Although petitioner argues that Evans' alleged disclosure prevented him from testifying in his own defense, this assertion is not credible. Had counsel not made any disclosure regarding petitioner's culpability, petitioner could have been impeached not only with his numerous confessions, but also with the guilty plea which he initially entered and later withdrew. See State v. Atkison, 6 Or. App. 68, 71, 485 P.2d 1117 (1971) (allowing a withdrawn guilty plea to be used against a defendant for impeachment purposes during cross-examination).

Because any disclosure which arguably occurred did not reveal any information which petitioner had not already divulged, his counsel's performance did not fall below an objective standard of reasonableness, and petitioner suffered no prejudice. The PCR trial court's decision on this issue is therefore neither contrary to, nor an unreasonable application of, clearly established federal law.

To the extent petitioner argues that Evans' alleged disclosure prevented him from presenting a defense that others had committed the crimes for which he was charged, petitioner did not fairly present such a claim to Oregon's state courts. See Respondent's

12 - FINDINGS AND RECOMMENDATION

Exhibit 125, pp. 10-11. Accordingly, this argument is not preserved for federal habeas corpus review. See Rose v. Lundy, 455 U.S. 509, 519 (1982) (requiring habeas litigants to fairly presenting their claims to the state courts before a federal court will consider the merits of those claims).

    B.    **Suborning Perjury**

Petitioner next alleges that Rebecca Davis, the attorney who represented him after Evans' withdrawal, rendered ineffective assistance of counsel when she instructed a defense witness to lie under oath.

At trial, Davis called Robert Miller, one of petitioner's co-defendants who had already pleaded guilty to Assault in the Third Degree based on his participation in the altercation. Trial Transcript, p. 179. During cross-examination, Miller testified that Davis had instructed him how to testify:

> Q: Have you ever spoken with Miss Davis?
>
> A: Briefly.
>
> Q: That's this individual here.
>
> A: Briefly in the courtroom before the first trial.
>
> Q: Okay.
>
> A: Or the lobby.
>
> Q: What was said with regard to the knife being thrown and your testimony with Miss Davis?
>
> A: She basically instructed me what to say, the way the knife was thrown.

13 - FINDINGS AND RECOMMENDATION

>           Q:   And what did she tell you to say?
>
>           A:   She told me to say that I seen the knife hit the ground.
>
>           Q:   And is that, in fact, what happened?
>
>           A:   No.

Id at 239-40.

When Davis questioned Miller on redirect examination, she challenged the veracity of Miller's statement by asking if there were any witnesses to the alleged conversation who could corroborate version of events:

>           Q:   Was there anybody else there when I was talking with you?
>
>           A:   Which time?
>
>           Q:   In the hallway, that you were just talking about.
>
>           A:   There was quite a few people sitting, but there was nobody listening to us when we were talking.
>
>           Q:   Okay.

Id at 241.

Although Davis presented no affidavit or testimony, the PCR trial court found that "[c]ounsel did not advise one or more defense witnesses to testify to false facts." Respondent's Exhibit 122, p. 5. Petitioner asks this court to disregard this factual finding because it is without any evidentiary support.

The PCR trial court made a credibility determination and decided that Davis had not advised Miller to testify falsely. Miller, the sole source of evidence, had pled guilty to several

crimes arising from the same incident. As a result, his credibility was questionable since he had nothing to lose by lying on the stand. Petitioner asks this court to second-guess the PCR trial court's credibility determination, but has not provided clear and convincing evidence to do so. As this habeas court is bound by the PCR trial court's factual finding on this matter, counsel's performance did not fall below an objective standard of reasonableness because she did not advise Miller to provide false testimony.

Even if counsel did attempt to guide Miller's testimony, there is not a reasonable likelihood that the jury would have acquitted him of any of the charges he faced. Not only had petitioner given numerous and detailed confessions, but Miller did not testify that the knife hit the ground as Miller told him to say. Instead, he testified that he did not know if the knife hit or missed Peterson. Trial Transcript, p. 235. Consequently, the PCR trial court's decision that Davis did not deprive petitioner of his right to counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.

### C. <u>Advice to Withdraw Guilty Plea</u>

Finally, petitioner contends that Davis rendered ineffective assistance of counsel when she failed to accurately and competently advise him regarding the value of the State's plea offer and the potential sentencing consequences he faced if he elected to proceed

to trial. The Strickland test applies to claims that a petitioner did not receive effective assistance in determining whether to accept a guilty plea. Hill v. Lockhart, 474 U.S. 52 (1985). Where a petitioner has pled guilty, he demonstrates prejudice if he shows that there is a reasonable probability that, but for counsel's errors, he would not have entered such a plea and would have insisted on going to trial. Id at 59. Accordingly, in this case where petitioner claims he was misled into passing on a plea offer, he demonstrates prejudice if he shows that, but for counsel's erroneous advice, he would have insisted on entering a guilty plea.

Petitioner argues that Davis failed to adequately advise him regarding the sentence he potentially faced if he was found guilty at trial. He asserts that counsel advised him that he was facing a sentence of 160 months, when he actually faced a sentence of 190 months if convicted. It is uncontroverted that petitioner was offered a plea bargain of 120 months in prison.

During petitioner's PCR deposition, he addressed the issue of Davis' performance with respect to his guilty plea:

> Q: Okay. The next big claim is that Ms. Davis improperly advised you to withdraw the plea agreement. Did you tell Ms. -- whose idea was it to withdraw from the plea deal? Was it your idea?
>
> A. Partly. Partly and partly not.
>
> Q: Uh-huh.
>
> A: Because I had asked her, you know, how's it look for me. And she -- all along I was wondering how it was looking for me, you know, if I'm going to

16 - FINDINGS AND RECOMMENDATION

> get a good plea bargain or am I going to get a long time in prison or is anything going to come of this. And she had told me at the beginning when she took over my case, well, it's not looking too good. It's not looking too good for you at all, you know. And I just got to hearing that so much I was just like, man, whatever, I'll just take whatever kind of plea bargain she's going to give me.
>
> Q: Why did you change your mind and go to trial?
>
> A: Because I thought the truth was going to be heard. I thought that it would really be -- come out that way. Plus, Ms. Davis had told me she had some good information, some good leads on things, you know. And so I was like, okay, a hundred and twenty months was the deal at that time. And I really didn't feel that for what I had done my first time in trouble -- well, not my first time in trouble, but my first time as an adult, going to prison, I was like that's way too much time for what had really happened, and so I was just like, I'll take it back. She was telling me good things about my case. So I was just like, okay, we're just going to ride this out.

Respondent's Exhibit 114, pp. 15-16.

Based on the evidence before it, the PCR trial court found that "[c]ounsel did not improperly advise petitioner to withdraw his plea agreement." Respondent's Exhibit 122, p. 4.

Assuming counsel advised petitioner that he could receive only a 160-month sentence if he elected to go to trial, instead of a possible 190-month sentence, the record contains no evidence that petitioner was influenced by this estimate. Instead, according to petitioner's PCR deposition, he wished to proceed to trial because he wanted his side of the story to be heard, and he found the 120-month plea offer to be unacceptable given his participation in the

17 - FINDINGS AND RECOMMENDATION

crime and lack of serious criminal history.  In short, there is no evidence in the record that petitioner would have accepted the 120-month plea offer had he known he faced a possible sentence of 190 months if he elected to exercise his right to a jury trial.

In addition, assuming counsel projected a maximum sentence of 160 months if petitioner was convicted on all counts at trial, counsel's estimate was not a gross mischaracterization of the 190-month sentence petitioner actually received and therefore did not constitute ineffective assistance of counsel.  Cf. Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) (where a defendant has pled guilty due to erroneous advice from counsel, defendant must show that counsel grossly mischaracterized the potential sentence which could result from a guilty plea).

Although petitioner asks the court to infer that he would have opted for the plea agreement had he known he might face a 190-month sentence at trial, it is difficult to draw such an inference based on the lack of any supporting evidence in the record.  Accordingly, the PCR trial court's conclusion that Davis did not provide ineffective assistance of counsel in this regard is neither contrary to, nor an unreasonable application of, clearly established federal law.

### III. Blakely Claim Raised in Petitioner's Reply

Petitioner also raises a new claim in his Reply memorandum based on the Supreme Court's decision in Blakely v. Washington, 542

U.S. 296, 124 S. Ct. 2531 (2004).  Petitioner failed to fairly present such a claim to Oregon's state courts, therefore it is unpreserved for federal habeas corpus review.

Even assuming petitioner had fairly presented this claim to Oregon's state courts, he would not be entitled to relief because Blakely was decided after petitioner's conviction became final. See Schardt v. Payne, 414 F.3d 1025, 1036 (9th Cir. 2005) (holding that Blakely does not apply retroactively to a conviction that became final before the Blakely decision was announced).

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (docket 2) should be DENIED, and judgment should be entered DISMISSING this case, with prejudice.

## SCHEDULING ORDER

Objections to these Findings and Recommendation(s), if any, are due January 3, 2006. If no objections are filed, then the Findings and Recommendation(s) will be referred to a district court judge and go under advisement on that date.

///

///

///

///

///

///

If objections are filed, then the response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

DATED this <u>13th</u> day of December, 2005.

<u>s/   Janice M. Stewart        </u>
Janice M. Stewart
United States Magistrate Judge